UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VERNON ROBINSON and NOLAN A. ROBINSON, NATHAN A. ROBINSON, Individually and by Next Best Friend, VERNON ROBINSON, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) CAUSE NO. 3:07-CV-77 RM |
| CHRISTINA JOHNSON and CHRISTOPHER JOHNSON | ) ) ) |
| Defendants. | ) |

OPINION AND ORDER

On February 26, 2007, Vernon Robinson, individually and on behalf of his sons Nolan and Nathan,[1] filed a complaint against Christina and Christopher Johnson alleging that the Johnsons intentionally and illegally intercepted and recorded conversations between Mr. Robinson and his sons. Mr. Robinson contends that the Johnsons' conduct violated the Federal Wiretap Act, 18 U.S.C. § 2520, the Indiana Wiretap Act, IND. CODE 35-33.5, and the Indiana common law tort of invasion of privacy by intrusion upon seclusion. The Johnsons have moved for summary judgment, and, for the following reasons, the court denies that motion.

Summary judgment is appropriate when "the pleadings, depositions,

---

[1] The eldest, Nicholas, originally was also a plaintiff in this matter, but when he turned eighteen he asked to be dismissed from the action. That request was granted on January 25, 2008.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

    Mr. Robinson and Ms. Johnson were married from November 4, 1988 until March 13, 2003 and have three children together; Nicholas, Nolan and Nathan.

Child custody was one of the major issues during Mr. Robinson and Ms. Johnson's dissolution of marriage proceedings. The final dissolution decree gave Mr. Robinson and Ms. Johnson joint legal custody, but Ms. Johnson was given physical care and custody of the boys with Mr. Robinson having visitation rights. Displeased with the custody arrangement, Mr. Robinson petitioned to modify custody on November 10, 2003. Christina married Christopher Johnson on December 31, 2004.

During the winter of 2004 through March or April 2005, Ms. Johnson began recording telephone calls to her home on an answering machine that was attached to an extension line. The recorder automatically recorded all calls that came into her home. Ms. Johnson believed that as the custodial parent, she had the right to consent on her three minor boys' behalf to record their calls with their father. At Ms. Johnson's request, Mr. Johnson occasionally changed the tapes for her when the tapes were full. Ms. Johnson stopped taping the telephone calls once she reread the Indiana parenting time guidelines that the Miami Circuit Court had given her at the time of the divorce decree and noticed in the "Commentary" section a suggestion that recording conversations between the other parent and child was improper.

Mr. Robinson learned Ms. Johnson had been recording the conversations between him and his sons and filed this action alleging violations of the Federal Wiretap Act, 18 U.S.C. § 2520, the Indiana Wiretap Act, IND. CODE 35-33.5, and the Indiana common law tort of invasion of privacy by intrusion upon seclusion.

3

The Federal Wiretap Act states that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation . . ." 18 U.S.C. § 2520. The statute provides an exemption for phone extensions used by a "subscriber or user in the ordinary course of its business", which the Second, Tenth, and Seventh Circuits have found to apply to the home as well as the marketplace. Scheib v. Grant, 22 F.3d 149, 151 (7th Cir. 1994). The Seventh Circuit's reasoning for applying this exemption to the home is that the court couldn't "attribute to Congress the intent to subject parents to criminal and civil penalties for recording their minor child's phone conversations out of concern for the child's well-being." Id. at 154. To qualify for the exemption "[a] parent's concern for a child's well-being must be the purpose in taping the phone conversation." Apter v. Ross, 781 N.E.2d 744, 754 (Ind.App. 2003).

In her summary judgment motion, Ms. Johnson asserts that she qualifies for the exemption because she recorded the boys' conversations with their father out of concern for their well-being. Ms. Johnson claims that she had physical care and custody of the boys and, after each call, the boys became hostile towards her and defiant of her authority. The boys started telling her that they soon would be living with their father "because Dad told us so." Ms. Johnson became convinced that Mr. Robinson was saying things to the boys to alienate them from her and to obtain custody of them. She believed, and continues to believe, that Mr.

4

Robinson's influence on the boys was detrimental to them and not in their best interests. She had a legitimate "business" interest in protecting her children by determining why they were questioning her authority as their mother.

Mr. Robinson contests Ms. Johnson's motivation for taping his phone calls with his sons. He states that although these conversations filled up both sides of fifteen audio tapes, Ms. Johnson didn't produce any tape during the custody hearing that contained any conversation between him and the boys to support her contention that he was saying things to alienate the boys from her or cause them to be hostile and defiant of her authority. Additionally, when Ms. Johnson was asked at the hearing on Mr. Robinson's petition to modify custody why she had taped the conversations she testified that she did so to "protect" herself, with no mention of the boys' welfare or well-being. "Well the purpose of recording them, I guess I looked at it as protecting myself because there were things that were being said that just were not appropriate and I knew that if it ever came up again that it would be denied so . . ." Mr. Robinson contends that Ms. Johnson taped the conversations to protect herself from truthful statements made by him to the boys.

"The burden of establishing a matter of intent is always difficult. We therefore approach the matter of summary judgment carefully in such cases." Scheib v. Grant, 22 F.3d at 155. This record presents a genuine issue of material fact as to what Ms. Johnson's intent or motivation was for recording the conversations between Mr. Robinson and his sons. The Johnsons are not entitled

5

to summary judgment on the federal wiretap claim.

The Indiana Wiretap Act provides that "[a] person whose communications are intercepted, disclosed, or used in violation of this article: . . . has a civil cause of action..." IND. CODE 35-33.5-5-4 (a)."[A] parent has the power to consent on behalf of his or her minor child to the recording of that child's phone conversations unless otherwise curtailed in some legal proceeding," Apter v. Ross, 781 N.E.2d at 756, if the recording is motivated by the parent's concern for the child's welfare. Id. at 757 ("While we recognize that Gary had a duty to consult with Victoria prior to making any major decisions regarding the children, we find that this consultation requirement did not apply when Gary's decision to record a conversation was motivated out of concern for his daughter's welfare while she was on the phone with her mother.").

In Leisure v. Wheeler, 828 N.E.2d 409 (Ind.App. 2005), when confronted with motions to modify custody and child support arrangements based partly on the father's taping of telephone conversations between the mother and minor child, the Indiana Court of Appeals again insinuated that the consent exception to the Indiana Wiretap Act involved a finding that the recording was done out of concern for the child's well-being. "[W]e have previously held that a parent can consent on behalf of his minor child to the recording of a telephone conversation where the recording is motivated by a genuine concern for the welfare of a child." 828 N.E.2d at 415-416. The same genuine issues of material fact that exist under the Federal Wiretap Act also seem to exist under the Indiana Act, and so the court

6

USDC IN/ND case 3:07-cv-00077-RLM-CAN   document 34   filed 03/26/08   page 7 of 9

denies the Johnsons' motion for summary judgment on this claim.

Mr. Robinson also brings a claim under the Indiana common law tort of invasion of privacy by intrusion upon seclusion, which "consists of an intrusion upon the plaintiff's physical solitude or seclusion, either as to his person or to his private affairs or concerns." Watters v. Dinn, 633 N.E.2d 280, 290 (Ind. App. 1994). In deciding whether an actionable intrusion into private information occurred, courts consider the normality of the means used and the defendant's purpose for obtaining the information. Id. In Watters, a mother and her new husband brought suit against the father and hospital after the hospital released the new husband's mental health records to the father for use in his pursuit of modification of the child custody arrangements. 633 N.E.2d at 280. The court found that "[w]hile David's conduct in . . . obtaining William's mental health records could well be offensive or objectionable to a reasonable person, David's purpose for intruding was legitimate . . . those records were relevant to his children's welfare in the Watters home." The court, therefore, found that the Watters had no claim against David for intrusion. Given this decision, it appears that the same factual issues of Ms. Johnson's motivation for recording the conversations between Mr. Robinson and his sons will be relevant to this claim. Summary judgment is not proper on the invasion of privacy claim.

Lastly, the Johnsons ask the court to grant summary judgment in Mr. Johnson's favor since, they assert, there is no evidence that he personally recorded any of the conversations at any time. Affidavits from Mr. and Ms.

7

Johnson indicate that Ms. Johnson recorded the conversations. All Mr. Johnson did was occasionally change the tapes on the machine at Ms. Johnson's request. They further contend that Mr. Johnson had no personal reason or motive to record any of the conversations.

Mr. Robinson counters that Mr. Johnson admitted to participation in recording the conversations at issue by changing the tapes (though Mr. Robinson clearly believes that this was not the full extent of his participation). Mr. Robinson also notes that the taping of the conversations began only after Mr. and Ms. Johnson married. Lastly, Mr. Robinson states that he is most concerned by Mr. Johnson having once been a practicing lawyer in the State of Indiana and yet allowed the recording to occur, even participating to some degree.

Mr. Johnson admits in his affidavit that Ms. Johnson told him she was going to start taping Mr. Robinson's conversations with his sons and her reasons behind doing so. He admits to changing the audio tapes on occasion. Mr. Johnson also admits that Ms. Johnson told him of her decision to cease recording those conversations and what prompted that decision. "At all times, I was acting at Christina's direction and control and assisting her in her desire to find out why her boys' behaviors were changing after they spoke with their father on the telephone." The extent of Mr. Johnson's participation in the recordings is an issue of fact, and so the court denies the Johnsons' motion for summary judgment as to Mr. Johnson.

For the reasons stated above, the court DENIES the Johnsons' motion for

summary judgment (Doc. No. 14).

    SO ORDERED.

    ENTERED:   <u>March 26, 2008</u>

                                    <u>/s/ Robert L. Miller, Jr.</u>
                                    Chief Judge
                                    United States District Court